IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PERCY L. WYATT,

    Plaintiff,

v.                                                Civil Action No. 3:14-cv-64-JAG

ROBERT STEIDEL,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to dismiss the plaintiff's second amended complaint ("Complaint.") (Dk. No. 13.) The plaintiff, Percy Wyatt, filed suit against Robert Steidel, the Director of the City of Richmond's Department of Public Utilities. Steidel now moves to dismiss the suit for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Wyatt makes four claims against the defendant. Count I involves a claim of race discrimination in violation of Title VII. Count II alleges a Title VII gender discrimination claim. Count III deals with alleged age discrimination in violation of the Virginia Human Rights Act. Lastly, Count IV claims gender discrimination in violation of the Equal Pay Act. The Court GRANTS the defendant's motion to dismiss Counts I, II, and III, and DENIES the motion as to Count IV.

## I. Facts[1]

Wyatt works for the City of Richmond's Department of Public Utilities. In 2013, the Department promoted him to a position as a Program Manager in its Wastewater Division. Before the promotion took effect, the plaintiff and his supervisor, Howard Glenn, negotiated his new pay, initially agreeing to an annual salary of $72,000. The following day, however, Willie Horton, the Deputy Director of the Public Utilities Department, told Wyatt that the City needed to renegotiate his salary. After some additional discussion, Wyatt accepted a new salary of $70,000. Horton then sent the salary request to Steidel for final approval. Steidel does not appear to have ever formally approved the plaintiff's salary.

Nearly three weeks later, Janine Wyatt[2], another Program Manager in the Public Utilities Department and Wyatt's former supervisor, sent an email to Steidel complaining that the Department had devalued her position by promoting several employees, including the plaintiff. She also requested a "salary review to correct any deficiency" if the newly-promoted Program Managers made more money than she did. Part of Janine Wyatt's concern stemmed from the fact that her salary played a large role in determining her upcoming retirement payments.

Several days later, Steidel forwarded Janine Wyatt's e-mail to Horton with instructions to renegotiate the salaries being offered to the plaintiff and Darryl Rivers, another recently-promoted Program Manager. Horton subsequently told Wyatt that the City could only offer him a maximum salary of $60,715.20. He justified the change by saying that the plaintiff could not

---

[1] Following settled law, the Court views the facts alleged in the complaint in the light most favorable to Wyatt *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). To overcome the defendant's motion to dismiss, Wyatt mustshow a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[2] The plaintiff Percy Wyatt is not related to his co-worker Janine Wyatt.

2

receive more than a 10% increase. The plaintiff unsuccessfuly complained about the reduced salary to both Steidel and Glenn, before eventually accepting the position at the offered salary.

## II. Discussion

### i. Title VII Race Discrimination

In Count I, Wyatt alleges that Steidel racially discriminated against him by denying him the same pay as fellow Program Manager Janine Wyatt. Taking into account the liberal pleading standard afforded to *pro se* plaintiffs, the Court assumes that Wyatt intended to charge Steidel in his official capacity because Title VII does not allow for personal liability. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Only employers—not supervisors—may be held liable under Title VII. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 473 (4th Cir. 1999). Suing an individual in his official capacity, though, is essentially the same as suing the entity for which he works. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

#### a. Timing of the Complaint.

After a plaintiff receives a right-to-sue letter from the EEOC, he has 90 days to file a complaint in federal court. 42 U.S.C. § 2000e-5(f)(1). Courts strictly adhere to the 90-day filing deadline, although exceptions exist for equitable tolling, waiver, and estoppel. *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–93 (1982)). Courts "treat *pro se* civil rights plaintiffs with heightened solicitude, such that technical pleading requirements will not prevent the plaintiff's claim from being considered." *Terry v. E.E.O.C.*, 21 F. Supp. 2d 566, 568 (E.D. Va. 1998). *Pro se* status and the filing of a petition to proceed *in forma pauperis* have been widely recognized as reasons to allow equitable tolling. *Dempsey v. Harrison*, 387 F. Supp. 2d 558, 561 (E.D.N.C. 2005);

*Druitt v. Coll. of William & Mary, Williamsburg Area Transp. Co.*, 4:04-CV-00128, 2005 WL 3845103, at *5-6 (E.D. Va. Feb. 23, 2005).

The EEOC mailed Wyatt its decision and right-to-sue letter on November 1, 2013. (Dk. No. 10, ex. G.) Wyatt says he received the EEOC's letter on November 1, 2013, a fact that is clearly incorrect. In an email, though, he mentions receiving the letter on November 4, 2013. Assuming he received the letter on November 4, 2013,[3] Wyatt had until February 3, 2014 to file a complaint. On January 30, 2014, Wyatt tried to file a complaint along with a motion to proceed *in forma pauperis*. (Dk. No. 1.) The Court denied the motion on February 4, 2014. (Dk. No. 2.) Wyatt thereupon filed a second complaint on February 7, 2014. (Dk. No. 3.) Wyatt initially filed a complaint within the 90-day deadline, but the court's denial of his *in forma pauperis* motion caused him to file an acceptable complaint just three days after the deadline. Due to his *pro se* status and the fact that he initially filed within the limitations period, the Court finds that equitable tolling applies to Wyatt's claim.

### b. Merits

To establish his discrimination claim, Wyatt, among other things, must show that the defendant treated him less favorably than similarly situated employees of a different race. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Disparate treatment "is the most easily understood form of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977). Claims of disparate treatment require "[p]roof of discriminatory intent ... [which] can in some situations be inferred from the mere fact

---

[3] *See Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. 2007) ("When the date that a potential plaintiff received actual notice of right to sue is disputed or unknown, Fed. R. Civ. P. 6(e) creates the presumption that notice was received three days after it was mailed.").

of differences in treatment." *Id.* (citing *Arlington Heights v. Met. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977)).

Wyatt has not proved that the City treated him differently because of his race. In the Complaint, the plaintiff says that the City discriminated against him by paying him less than Janine Wyatt.[4] Janine Wyatt, an existing supervisor at the time of the plaintiff's promotion, complained about the plaintiff's promotion and pay raise. Her complaints led the City to back out of its original salary agreement with the plaintiff. In her email, sent several weeks after the city came to an initial agreement on the plaintiff's salary, Janine Wyatt expressed concern that "several new Program Managers have been selected and that my title/position is not as exclusive as it was .... I hope that my salary is not or will not be less than those that are being promoted/hired." (Dk. No. 10 at ¶ 6.) To remedy any differences, Janine Wyatt requested a salary review. Within several days of receiving this email, Steidel changed the salary offer to the plaintiff. According to the plaintiff, this proves discriminatory intent.

The plaintiff comes to the wrong conclusion; his allegations show that race played no role in his pay cut. Janine Wyatt's email does not specifically mention the plaintiff or his race. If anything, the Complaint shows that the City worried about jumping the salary of a new program manager, such as the plaintiff, ahead of Janine Wyatt, a more senior manager.[5] At worst, the

---

[4] The Complaint does not say how much the City paid Janine Wyatt, but the Court will assume that her salary exceeded the plaintiff's.

[5] Janine Wyatt's concern about her retirement pay, while real to her, could not have played a role in the decision to lower the plaintiff's salary. The retiree's rate of pay determines her retirement pay; another employee's pay has no effect. The City's plan says: "Each person's retirement benefit is calculated on an individual basis. The amount of your monthly pension will depend on the following factors: Average Final Compensation. This is the average of your three highest annual salaries for 36 consecutive months."
http://ww.richmondgov.com/Retirement/faq.aspx#Pension (last viewed August 6, 2014). The City could only improve Janine Wyatt's retirement by changing *her* rate of pay, which apparently did not happen here.

City may have acted to smooth out Janine Wyatt's ruffled feathers. Neither of those motivations have anything to do with race. Because the plaintiff cannot show disparate treatment on the basis of race, the Court DISMISSES his claim.

*ii. Title VII Gender Discrimination*

In Count II, Wyatt claims that the City also discriminated against him because of his gender in violation of Title VII. In order for the Court to have jurisdiction over a Title VII discrimination claim, Wyatt must have exhausted all administrative remedies. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). As an initial matter, the plaintiff must have filed a charge of discrimination with the EEOC. Only those "claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint" are considered exhausted and may be brought in a subsequent lawsuit. *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

"If the scope of the [original EEOC] charge is not broad enough to include" all the claims in the Complaint, then the excluded claims "[are] procedurally barred for fail[ure] to exhaust the available EEOC administrative remedies." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 571 (E.D. Va. 2009). A plaintiff has not exhausted his administrative remedies over a claim that asserts a form of discrimination not raised in the charge. *Lucas v. Henrico Cty. Sch. Bd.*, 822 F.Supp.2d 589, 601-02 (E.D. Va. 2011) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)) (finding that the plaintiff had not exhausted her administrative remedies for sex discrimination because her charge only alleged race discrimination); *see also Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002). Among other things, the boxes the plaintiff checks on his charge form provide an important indication of whether the

plaintiff has exhausted all of his administrative remedies. *See Jones*, 551 F.3d at 301 (the plaintiff did not exhaust administrative remedies for her discrimination claim when she only checked the "Retaliation" box on her charge); *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005).

In his EEOC charge, Wyatt only checked the boxes for race discrimination and an equal pay violation. He did not check the box for sex discrimination. He failed to make any allegations of gender discrimination in his written explanation, discussing race discrimination alone. (Dk. No. 14, ex. B at 1.) By neither checking the gender discrimination box nor referencing it in the written portion of his charge, Wyatt failed to exhaust the administrative remedies available for his gender discrimination claim. Accordingly, the Court DISMISSES Count II.

### iii. Virginia Human Rights Act Age Discrimination

In Count III, Wyatt says the City discriminated against him because of his age in violation of the Virginia Human Rights Act. Va. Code Ann. § 2.2-3900 *et seq.* The Virginia Human Rights Acts states that "[n]o employer employing *more than five but less than 15 persons* shall *discharge* any such employee on the basis of ... age if the employee is *40 years of age or older*." Va. Code Ann. § 2.2-3903(B) (emphasis added). Wyatt's claims fails under the plain language of the statute for three reasons.

First, the City of Richmond—of which the Department of Public Utilities is part—employs more than fifteen people. Second, Steidel did not discharge Wyatt, nor does Wyatt claim that he was fired. Wyatt simply claims that the defendant denied him proper compensation. The VHRA only applies if the employer discharged an employee who meets the statutory requirements. *See Cross v. Suffolk City School Bd.*, No. 2:11-cv-882011, 2011 WL

2838180, at*5-6 (E.D. Va. July 14, 2011) (finding that the plaintiff could not pursue a claim because she had not been fired, and the defendant employed more than 15 people). Finally, Wyatt, at 34 years-old, does not meet the age requirement. His claim fails, and the Court DISMISSES Count III.

*iv. Equal Pay Act Gender Discrimination*

To establish a prima facie case of wage discrimination under the Equal Pay Act, a plaintiff must show: "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Courts often link the latter two requirements and review them together. *See Earl v. Norfolk St. Univ.*, No. 2:13-cv-148, 2014 WL 583972, at *6 (E.D. Va. February 13, 2014); *Ghayyada v. Rector and Visitors of Univ. of Va.*, No. 3:11-cv-00037, 2011 WL 4024799 at *6 (W.D. Va. Sep. 12, 2011). To prove the latter two requirements, "[j]ob descriptions and titles ... are not decisive. Actual job requirements and performance are controlling." *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282, 288 (4th Cir. 1974). The plaintiff must show that "the skill, effort and responsibility required in [his] job performance are [substantially] equal to those of a higher-paid [fe]male employee." *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) (citing *Corning Glass Works*, 417 U.S. at 195). *Pro se* plaintiffs receive a great deal of leniency regarding the specificity of their allegations. *Contrast Ghayyada*, 2011 WL 4024799 at *6 (finding that the *pro se* plaintiff met the latter two elements simply by describing his female coworker as his "counterpart") *with Earl*, 2014 WL 583972 at * 6 (finding that the represented

plaintiff did not meet the latter two requirements when he asserted that "the responsibilities of the job were essentially equivalent").

In this case, the plaintiff has pled sufficient facts to state a valid Equal Pay Act claim. First, he alleges that Janine Wyatt, a fellow program manager, made more money. (Dk. No. 10 at ¶ 9.) While the plaintiff does not precisely state how much Janine Wyatt made, he clearly believes that she commanded a higher salary. The Court finds that he has plausibly established the first element. *See Earl*, 2014 WL 583972, at *6 (finding that the plaintiff's allegation that "'his salary was woefully inadequate', compared to the 'salaries of female faculty'" established wage differences between the sexes).

Wyatt has also established the latter two elements. The plaintiff describes Janine Wyatt, the comparator employee, as his "predecessor." (Dk. No. 10 at ¶ 6.) The Court interprets this as an allegation that Janine Wyatt held the same position as the plaintiff and made more money than him. Furthermore, Janine Wyatt's email complains that "several new Program Managers have been selected and ... my title/position is not as exclusive as it was." (Dk. No. 10 at ¶ 6.) This could be broadly read to indicate that Janine Wyatt herself views the plaintiff as having the same job, and that his promotion diluted its importance and exclusivity. Accordingly, the plaintiff has satisfied the latter two elements, and the Court DENIES the defendant's motion to dismiss the plaintiff's Equal Pay Act claim.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the defendants' motion to dismiss as to the race, gender, and age discrimination claims. It DENIES the motion as to the Equal Pay Act claim.

The Court will enter an appropriate order.

Date: <u>August 12, 2014</u>

/s/ *[signature]*
John A. Gibney, Jr.
United States District Judge