IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PERCY L. WYATT,

    Plaintiff,

v.                                                      Civil Action No. 3:14-cv-64-JAG

ROBERT STEIDEL,

    Defendant.

## OPINION

This matter comes before the Court on cross-motions for summary judgment. Percy Wyatt claims that Robert Steidel, as Director of the City of Richmond Department of Public Utilities, violated the Equal Pay Act ("EPA") by paying Wyatt a lower salary than he paid a comparable female employee. Wyatt's choice of a comparator employee, however, does not satisfy the statutory requirements of equal skill and responsibility. Because the plaintiff failed to meet this necessary element of a *prima facie* case under the EPA, the Court GRANTS Steidel's motion for summary judgment and DENIES Wyatt's motion for summary judgment.

## I. STATEMENT OF FACTS[1]

Wyatt began working for the City of Richmond Department of Public Utilities in 2006 as a Trades Supervisor II in the Wastewater Division. He worked his way up through several promotions to the position of Wastewater Collections Program Manager in May 2013. This

---

[1] Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). The Court resolves all genuine factual disputes and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962) (per curiam). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S. Ct. 1348 (1986).

position involved supervising twenty-eight employees in the construction and maintenance of the City's sanitary sewer system. Negotiations over Wyatt's new salary proceeded in a less-than-linear way. On May 2, 2013, Wyatt and his direct supervisor, Howard Glenn, verbally agreed on a salary of $72,000. The following day, Willie Horton, the Deputy Director II of water utilities, told Wyatt that they needed to renegotiate his salary, and the two agreed to $70,000. Horton signed the agreement and sent it to Steidel for approval.

Before Steidel signed the agreement, another City employee, Janine Wyatt[2] ("Ms. Wyatt"), emailed Steidel on May 23, 2013, after she heard about high salaries for new program managers. Ms. Wyatt had worked as a program manager in Wastewater since 2008 and planned to retire soon. Because her ending salary affects her retirement benefits, she wanted to make sure that her pay, then $69,300, was competitive with that of newly hired program managers. She requested a "salary review to correct any deficiency." (Dk. No. 23, Ex. C.) Several days later, Steidel forwarded her email to Horton with a request to "please take this information into account as you revise the recommendation for Mr. Rivers and Mr. Wyatt." (Dk. No. 27, Ex. C.) He noted that Ms. Wyatt's concern was that "salary compression could negatively impact her." (*Id.*) Over the following month, the City conducted a salary study and on July 9, 2013, offered Wyatt a salary of $60,715, over $9000 less than Horton offered in early May.

Wyatt emailed Steidel to discuss the reasons for the dramatic decrease. Steidel pointed him back to his direct supervisor, Glenn, who explained that Steidel's parameters limited Wyatt to a ten to fifteen percent increase. Glenn did not say why these parameters did not apply during the initial negotiations in May. On July 10, 2013, Wyatt reluctantly accepted a salary of $60,715. Concerned that he had been treated unfairly, he filed a claim of discrimination with the

---

[2] The plaintiff and Ms. Wyatt are not related.

2

City's Human Resources Department. After investigating, Human Resources determined that the City's handling of Wyatt's salary negotiations had not violated the City's anti-discrimination regulation. In October 2013, Wyatt filed a complaint with the Equal Employment Opportunity Commission, claiming racial and gender discrimination. The Commission chose not to sue the City, and Wyatt brought this action in February 2014 claiming racial, age, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and the Virginia Human Rights Act. Only the Equal Pay Act claim survived Steidel's motion to dismiss, and the Court will now consider this remaining allegation.

## II. DISCUSSION

The Equal Pay Act provides:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

To establish a *prima facie* case of wage discrimination under the Equal Pay Act, a plaintiff must show: "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223 (1974)). To prove the latter two requirements, "[j]ob descriptions and titles . . . are not decisive. Actual job requirements and performance are controlling." *Brennan v. Prince William Hosp. Corp.*, 503 F.2d 282, 288 (4th Cir. 1974).

3

The plaintiff must show that "the skill, effort and responsibility required in [his] job performance are equal to those of a higher-paid [fe]male employee." *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) (citing *Corning Glass Works*, 417 U.S. at 195). For purposes of interpreting the EPA, "equal means *substantially equal*." *Id.* (quoting *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972)). "Congress," however, "chose the word 'equal' over the word 'comparable' in order to 'show that the jobs involved should be virtually identical, that is, . . . very much alike or closely related to each other.'" *Id.* at 333 (quoting *Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973)). Having a "similar title plus similar generalized responsibilities" is not equivalent to having "equal skills and equal responsibilities." *Id.* at 334.

The job of Wyatt's chosen comparator, Ms. Wyatt, does not require "equal skill, effort, and responsibility." *Brinkley*, 180 F.3d at 613. Wyatt's job as a program manager in the Wastewater Collections Division gives him responsibility for supervising City employees involved with maintenance and construction projects of the sanitary sewer system. In this capacity, he determines "whether in-house personnel are available and able to undertake particular projects" and then schedules those projects. (Dk. No. 25, Ex. 1 ¶ 13.) In contrast, Ms. Wyatt's job as a program manager requires her to administrate several multi-million dollar contracts with outside engineering and construction companies. She "select[s] the appropriate contractor for particular projects, monitor[s] compliance, enforc[es] contract terms, and ensur[es] the contractors receive the appropriate payments under the terms of the contracts." (*Id.* ¶ 12.) Simply put, these are materially different jobs.

While the two positions both bear the title of "program manager" as an indicator of their general place within the Utility Department hierarchy, they do not meet "two textual touchstones

4

of the EPA—equal skills and equal responsibility." *Wheatley*, 390 F.3d at 332. Both jobs include comparable aspects and functions, particularly in that they contribute to the good working order of the City's sewer systems. They fall short, however, of reaching the level of substantial equality required by the EPA.

In failing to meet these requirements of a *prima facie* case under the EPA, the plaintiff has not carried his burden. Although Wyatt's supervisors may have handled his salary negotiations imprudently, or even incompetently, they did not violate the EPA. Both Wyatt and Ms. Wyatt unquestionably make valuable contributions to the work of the Utility Department. "[I]t is not the job of the courts," however, "to discard Congress' studied use of the term 'equality' and set the price for their services." *Id.* at 334.

### III. CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motion for summary judgment and DENIES the plaintiff's motion for summary judgment.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: March 7, 2015
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge